UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        -against-

DAVID SPRALLING,

                      Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/28/2022

20 Cr. 490 (AT)

**ORDER**

ANALISA TORRES, District Judge:

The Government initiated this action against Defendant, David Spralling, on August 14, 2020, by filing a complaint alleging that Spralling knowingly possessed a .38 caliber semi-automatic pistol on March 8, 2020, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2. Compl. ¶ 1, ECF No. 1. On August 24, 2020, Spralling was arrested. Dkt. Entry 8/24/2020. On September 15, 2020, he was indicted on one count of being a felon in possession of a firearm ("Count One"). Indictment, ECF No. 6. On September 25, 2020, Spralling was arraigned and pleaded not guilty to Count One of the indictment. ECF No. 8. The Court has scheduled trial for February 27, 2023. ECF No. 30.

Spralling moves the Court pursuant to Rule 30 of the Federal Rules of Criminal Procedure for an order determining that the affirmative defense of necessity is available as a matter of law in a prosecution for possession of a weapon in violation of 18 U.S.C. § 922(g)(1), and that a jury instruction on the defense of necessity is warranted in this case. Def. Mot. at 1, ECF No. 36. For the reasons stated below, the motion is DENIED.

## BACKGROUND

On March 13, 2006, Spralling was convicted of criminal possession of a weapon in the second degree in violation of New York Penal Law § 265.03, a Class C felony punishable by imprisonment for a term exceeding one year. Compl. ¶ 6.

In the early morning of March 8, 2020, Spralling visited an ex-girlfriend and her young son in the Bronx.  Def. Mot. at 1; Gov. Opp. at 1, ECF No. 37; Compl. ¶ 3(a).  Spralling's ex-girlfriend has a history of mental illness.  Def. Mot. at 1.  During Spralling's visit, she pointed a gun at Spralling's head, unprovoked, and threatened him.  *Id.*  Spralling was terrified for his safety and that of his ex-girlfriend and her son.  *Id.*  Spralling took the gun from her and immediately left the apartment.  *Id.*

At the same time, three NYPD officers were on routine patrol in the Bronx in an unmarked car.  Compl. ¶¶ 3(a)–(b).  The officers noticed a pedestrian later identified as Spralling.  *Id.* ¶ 3(b).  As their vehicle approached Spralling, one of the officers identified himself as a police officer and asked Spralling what was going on.  *Id.* ¶ 3(c).  Spralling did not respond.  *Id.*  The officers observed that Spralling was moving his hand and arm inside his jacket pocket.  *Id.* ¶ 3(d).  One officer saw Spralling discard a metallic object from his left pocket into the hedges on the left side of the sidewalk.  *Id.*  The officer believed the object to be a gun.  *Id.*  All three officers heard a metallic clink as the object was discarded.  *Id.*  Two officers exited the vehicle and found a handgun on the sidewalk near the hedges where Spralling had been walking.  *Id.* ¶ 3(e).

One officer relayed what had transpired via radio to a fourth NYPD officer and NYPD sergeant in a second car.  *Id.* ¶¶ 3(a), (f).  The sergeant and officer in the second car stopped Spralling.  *Id.* ¶ 3(f).  During and following his arrest, Spralling stated that he did not own the discarded gun and that he had taken it from his girlfriend, who had pointed it at him.  *Id.* ¶ 3(g).

**DISCUSSION**

I.    <u>Legal Standard</u>

Rule 30 of the Federal Rules of Criminal Procedure allows any party to request that the court "instruct the jury on the law as specified in the request." Fed. R. Crim. P. 30(a). "A federal court may decline to instruct on an affirmative defense . . . when the evidence in support of such a defense would be legally insufficient." *United States v. Johnson*, 816 Fed. App'x 604, 609 (2d Cir. 2020) (summary order) (alteration in original) (quoting *United States v. White*, 552 F.3d 240, 246 (2d Cir. 2009)), *cert. denied*, 141 S. Ct. 2793 (2021).

The Second Circuit has left open the question of whether the affirmative defense of necessity is available in the felon-in-possession context. *White*, 552 F.3d at 246; *see also United States v. Bogle*, 522 Fed. App'x 15, 22 (2d Cir. 2013) (summary order). In assuming without deciding that the necessity defense is available in this context, the Second Circuit has listed the elements of the defense as follows: (1) "the defendant or a third person was under unlawful and present, imminent, and impending threat of death or serious bodily injury;" (2) "the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct;" (3) "the defendant had no reasonable legal alternative to violating the law by taking possession of a weapon;" (4) "there was a direct causal relationship between the criminal action [of] possessing the weapon in violation of § 922(g)(1) . . . and the avoidance of the threatened harm;" and (5) "the defendant . . . did not maintain possession of the weapon at issue any longer than absolutely necessary." *White*, 552 F.3d at 247 (citing *United States v. Deleveaux*, 205 F.3d 1292, 1297 (11th Cir. 2000), and *United States v. Singleton*, 902 F.2d 471, 473 (6th Cir. 1990)).

The crime of possession "continues to be committed as long as the felon continues to be in possession." *United States v. Williams*, 389 F.3d 402, 405 (2d Cir. 2004) (quoting *United States v. Dillard*, 214 F.3d 88, 94 n.5 (2d Cir. 2000)).   The necessity defense, therefore, requires that the defendant possessed the weapon only so long as the circumstances satisfying the elements of the defense continued to exist.  *Id.*

The necessity defense, if available, "must be construed 'very narrowly.'"  *White*, 552 F.3d at 247 (citing *United States v. Perrin*, 45 F.3d 869, 875 (4th Cir. 1995); *United States v. Paolello*, 951 F.2d 537, 541–42 (3d Cir. 1991); and *Singleton*, 902 F.2d at 472).

II.      Application

The Court need not decide whether the necessity defense is available as a matter of law in a prosecution for possession of a weapon in violation of 18 U.S.C. § 922(g)(1) because Spralling's factual allegations do not support the affirmative defense of necessity.

Although a serious threat of death or serious bodily harm existed at the time Spralling took the gun from his ex-girlfriend, it no longer existed when Spralling disposed of it.  Spralling states that his ex-girlfriend pointed the gun at his head.  Def. Mot. at 1.  At that moment, Spralling was clearly in imminent danger.  *See, e.g.*, *White*, 552 F.3d at 247.  But, he "immediately" thereafter left his ex-girlfriend's apartment and maintained possession of the gun until he was arrested, Def. Mot. at 1, which took place one-and-a-half avenues and six city blocks away from the apartment, Gov. Opp. at 5.[1]  After leaving the apartment and up until the moment of his arrest, Spralling's life was no longer in imminent danger.  *See Williams*, 389 F.3d at 405 n.3 ("[D]efendant was not under an unlawful and present threat of death or serious bodily injury immediately prior to being

---

[1] Spralling does not dispute this.  He only states that he walked for "likely less than 10 minutes" before being arrested. Def. Reply at 3, ECF No. 38.

arrested" because he "was in the process of dumping th[e] gun . . . when [he] was stopped by the police."); *see also White*, 552 F.3d at 247 (concluding that the defendant was no longer in immediate danger once the assailant left the premises).   Thus, the circumstances justifying possession ceased to exist when Spralling left the apartment.

Spralling argues that he was maintaining possession of the gun until he had an "opportunity to safely dispose" of it.   Def. Mot. at 6–7.   However, the Second Circuit considered a similar situation in *White* and determined that the necessity defense was not applicable.   552 F.3d at 247–48.   In *White*, the defendant's girlfriend pointed a gun at him, and the defendant took the gun from her to protect himself.   *Id.* at 247.   His girlfriend then ran out of the house.   *Id.*   The defendant took the gun into the next room to unload it in order to prevent his girlfriend's son from handling it.   *Id.* The Second Circuit held that it was unlikely that there was an imminent threat to the child after the girlfriend left the apartment because the child was in another room and had not expressed any intention of handling the weapon.   *Id.* at 248.   And, even if the child was in immediate danger, the defendant may have been justified in maintaining possession of the gun in order to place it outside the reach of the child, but was not justified in maintaining possession long enough to unload the gun.   *Id.*   Likewise, Spralling may have been justified in removing the weapon from the apartment in order to prevent harm to his ex-girlfriend and her son, but he was not justified in carrying the weapon as he walked more than six blocks away.

Spralling contends that the question of whether he was justified in retaining the gun after he left the apartment is for the jury.   Def. Reply at 3–4.   Pointing to Fourth Circuit caselaw, he suggests that the assessment of whether he was justified in retaining the gun should be incorporated into the third element of the necessity defense: that the defendant "had no reasonable legal

alternative" but to violate the law. *United States v. Faison*, 840 Fed. App'x. 736, 742 (4th Cir. 2021) (per curiam) (finding that, in assessing whether a defendant "had no reasonable legal alternative" to possessing a weapon, "the jury should consider whether the defendant took reasonable steps to dispossess himself of the weapon once the threat entitling him to possess it had abated"). Spralling argues that he has raised a question of fact as to whether he acted reasonably, which warrants a jury instruction on the necessity defense. Def. Reply at 3–4.

Spralling misstates the law. First, the Second Circuit has treated the dispossession of the weapon as soon as possible as a standalone requirement for the necessity defense. *See White*, 552 F.3d at 247 (citation omitted). And, Spralling acknowledges as much. Def. Reply at 3. Second, the third element of the necessity defense does not ask whether a defendant acted reasonably, but rather whether the defendant had *no* "reasonable and legal alternative." *See United States v. Gregg*, No. 01 Cr. 501, 2002 WL 1808235, at *4 (S.D.N.Y. Aug. 6, 2002). Here, Spralling did have reasonable, legal alternatives to maintaining possession of the gun after he left his ex-girlfriend's apartment. He could have called the police upon leaving the apartment, *see* Def. Mot. at 1 (stating that Spralling was on the phone when he was approached by police), or turned in the gun once police officers approached him, *see Gregg*, 2002 WL 1808235, at *4 ("[Defendant] had several reasonable and legal alternative[s.] . . . [W]hen approached by the police . . . [Defendant] could have turned over the gun immediately[.] . . . Alternatively, [Defendant] could have called 911[.]").

For these reasons, Spralling's factual allegations are "legally insufficient" to establish the affirmative defense of necessity. *Johnson*, 816 Fed. App'x at 609 (citing *White*, 552 F.3d at 246). Spralling's motion for a jury instruction on the necessity defense is, therefore, DENIED.

**CONCLUSION**

Spralling's motion for a jury instruction on the necessity defense is DENIED.  The Court declines to reach the question of whether the affirmative defense of necessity is available as a matter of law in a prosecution for possession of a weapon in violation of 18 U.S.C. § 922(g)(1), because the Court finds that, even assuming the legal availability of the defense, Spralling's factual allegations are insufficient to establish the elements of the defense.  A jury instruction on the necessity defense is thus unwarranted in this case.

The Clerk of Court is directed to terminate the motions at ECF Nos. 35 and 36.

SO ORDERED.

Dated:  November 28, 2022
New York, New York

_____
ANALISA TORRES
United States District Judge

7